IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Case No. 04-cv-1099-JLK-DLW

**WOLF CREEK SKI CORPORATION, INC.,**

    Plaintiff,

v.

**LEAVELL-McCOMBS JOINT VENTURE, d/b/a VILLAGE AT WOLF CREEK,**

    Defendant.

---

**ORDER ON MOTION TO BIFURCATE
AND SETTING PRETRIAL SCHEDULE**

---

Kane, J.

This matter is before me on Defendant's Motion for Bifurcation (Doc. 260), filed January 17, 2008. Having carefully considered the Motion, Plaintiff's response, Defendant's reply and all applicable legal authorities, and being fully advised in the premises, I rule as follows:

Defendant Leavell-McCombs Joint Venture ("Joint Venture") requests that I bifurcate trial of any damages to be awarded on the Joint Venture's counterclaims from the trial set to begin on July 7, 2008. Under Rule 42 of the Federal Rules of Civil Procedure, I have discretion to order a separate trial of discrete issues and claims "[f]or convenience, to avoid prejudice, or to expedite and economize," provided that bifurcation preserves any federal right to a jury trial. Fed. R. Civ. P. 42(b). The latter requirement prohibits separate trials that would permit a second jury to reexamine factual issues

decided by the first jury, because such reexamination would violate the Seventh Amendment. *See Blyden v. Mancusi*, 186 F.3d 252, 268 (2nd Cir. 1999) (factual issues may not be tried to separate, successive juries); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996) ("Constitution allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first."). In addition, "[r]egardless of efficiency and separability [of issues] . . . bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993). Because of these and other concerns, "[s]eparation of issues for trial is not to be routinely ordered," Fed. R. Civ. P. 42, Adv. Comm. Notes, 1966 Amend., and is generally reserved for exceptional cases, *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 498 F. Supp. 2d 734, 735 (D. Del. 2007).

The Joint Venture, as the party requesting bifurcation, bears the burden of proving that bifurcation to allow a separate trial on its claimed damages is necessary and appropriate under these standards. *F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 393 (M.D.N.C. 1999); *see* 9A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc.: Civ. 3d § 2388, at 124 & n.23 (2008) (collecting cases). The Joint Venture argues bifurcation is warranted primarily because circumstances beyond its control have prejudiced its ability to litigate damages on its breach of contract and other claims at this time. The Joint Venture also asserts bifurcating its claimed damages from the July, 2008 trial would be efficient and economical because it would shorten the length

of that trial and, if the jury does not find Wolf Creek liable to the Joint Venture, allow trial of the damages portion of the Joint Venture's case to be avoided entirely.

I am not persuaded that bifurcation as proposed by the Joint Venture is warranted, or even possible given the constitutional limitations on the use of this procedure. First, the Joint Venture's argument makes clear that what it is seeking here is not just a separate trial on its counterclaim damages, but also a lengthy stay of any trial on this issue to allow the Joint Venture to return to Mineral County and the Forest Service with new applications for the proposed Village at Wolf Creek and roads to access this new community. Only when this process is completed, the Joint Venture argues, will it know the cost of the road application process and newly approved access roads, costs which it claims as damages for Wolf Creek's alleged breach of contract and other alleged wrongdoing.

This application process consumed at least five years the first time the Joint Venture attempted it, and ended with the approval it obtained from the County being overturned by the Colorado state courts, and with the Joint Venture's decision to withdraw its road access request to the Forest Service after it was challenged in this court. Thus, any finality on the location and cost of the Village access roads required by the County and/or Forest Service is very likely years in the future, even under the most optimistic of scenarios.

This delay would severely prejudice Wolf Creek, which is a relatively small, family-run business that reasonably seeks closure to this litigation. Wolf Creek has

invested significant resources in discovery and trial preparation on the assumption, unquestioned until now, less than six months before trial, that this trial would encompass all of the issues presented by the Joint Venture's counterclaims, including damages. Fact and expert discovery on these issues, again including damages, has been completed. Bifurcating trial now to allow the Joint Venture to reformulate its damages theory and evidence based on renewed governmental approval processes that have not yet begun would render the existing discovery on the Joint Venture's claimed damages essentially meaningless, and prejudice Wolf Creek by requiring it to expend time and resources on an entirely new round of fact and expert discovery at some undetermined point in the future.[1] For these same reasons, bifurcation at this time would neither be economical nor expedite resolution of this action as contemplated by Rule 42(b).

I am also not persuaded that the prejudice claimed by the Joint Venture overcomes the prejudice Wolf Creek would suffer if a separate damages trial was ordered. One of the premises for the Joint Venture's claim of prejudice is the notion that it bears no responsibility for the circumstances that have caused it to reopen the access road issue with the County and the Forest Service and made it more difficult for the Joint Venture to prove its theory of damages. The Joint Venture, however, bears responsibility for its part in persuading Mineral County years ago to approve a development plan that included an

---

[1] I also note that Wolf Creek is at risk of prejudice if bifurcation is allowed because one of its key witnesses, Kingsbury Pitcher, is 89 years old and might not be able to participate at a second trial on damages years in the future.

access road the state court found inadequate under state law and caused it to overturn the County's decision. The Joint Venture also played a role in preparation of the EIS for its first access road application to the Forest Service and prompted the Forest Service to modify the Record of Decision (ROD) it issued based on this EIS, and thus bears some responsibility for the circumstances that led this court to enjoin implementation of the ROD until the conclusion of that litigation. It was also the Joint Venture's decision to settle this litigation by withdrawing its access road application and starting the Forest Service approval process anew. Under these circumstances, the Joint Venture's claim of prejudice based on circumstances beyond its control is not compelling.

    In addition to these considerations, permitting one jury to determine liability on the Joint Venture's breach of contract and other claims as proposed, and another to decide any damages caused by the alleged breach and other wrongdoing, would raise Seventh Amendment concerns. Under its bifurcation proposal, the Joint Venture would be required to prove by a preponderance of the evidence both the amount of its claimed damages at the second trial and also that these damages were caused by any breach or other wrongdoing found by the jury at the first trial. Given that the claimed breach and wrongdoing is essentially Wolf Creek's alleged lack of diligence and good faith effort in seeking Forest Service approval for a Village access road, determination of damages causation in a second trial would necessarily require presentation of much the same evidence regarding Wolf Creek's conduct as will be presented and considered by a jury deciding whether Wolf Creek is liable to the Joint Venture for this conduct. Evidence

5

regarding the Joint Venture's conduct would also be presented at the first trial in connection with liability on both parties' claims, and again in a separate trial on the Joint Venture's claimed damages in connection with damages causation and Wolf Creek's failure to mitigate defense. As a result, the issues of Wolf Creek's liability and any damages caused by its liable conduct are sufficiently interwoven that there is a risk that a second jury would reexamine factual issues concerning both Wolf Creek's and the Joint Venture's conduct in determining whether the Joint Venture can recover the damages it seeks. The issues of liability and damages are not so distinct and separable, therefore, that a separate trial of the Joint Venture's damages could be had without confusion and uncertainty, which would amount to a denial of Wolf Creek's right to a fair trial. *See F & G Scrolling Mouse*, 190 F.R.D. at 454-55 (confusion and uncertainty regarding separate trials of interwoven factual issues denies a fair trial); *see also Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 457 (3rd Cir. 2001) (finding district court erred in granting partial new trial for damages only because "there was no conceivable fashion by which a second jury could fairly evaluate the extent of [the party's] damages without also fully appreciating" the conduct that caused them).

In conclusion, I find this is not the exceptional case warranting bifurcation of trial on liability and damages on the Joint Venture's counterclaims. Not only does the Seventh Amendment preclude separate trials of these issues, but bifurcation as proposed by the Joint Venture would not be convenient or economical, certainly would not

6

expedite proceedings and would severely prejudice Wolf Creek. Accordingly, the Joint Venture's Motion to Bifurcate (Doc. 260) is DENIED.

Trial on this action will commence on Monday, July 7, 2008, in Durango as set forth in the Pretrial Order. The deadlines for filing *Daubert* motions, other motions in limine and objections to exhibits are also set forth in this Order, and the parties have reported that they anticipate filing pretrial motions by these deadlines. I have also conducted a preliminary review of the jury instructions proposed by the parties and see that they raise a number of issues that will need to be resolved before trial. In order to ensure that these matters can be promptly resolved so that trial can proceed as scheduled, I therefore set the following pretrial hearing and conference dates:

| | |
|---|---|
| Hearing on *Daubert* Motions and Status Conference: | April 11, 2008 |
| Hearing on Other Motions in Limine & Objs. to Exhibits: | May 8, 2008 |
| Final Trial Preparation and Jury Instruction Conference: | May 29, 2008 |
| Additional Trial Preparation Conference (if necessary): | June 27, 2008 |

The April 11 and May 8 hearings will held in Durango, starting at 10:00 AM, at 103 Sheppard Drive, Room 235. The May 29 conference will be held at the Arraj Courthouse in Denver, 901 19th St., Courtroom A-802, also beginning at 10:00 AM. The location and time of the possible June 27 conference will be determined at a later date.

IT IS SO ORDERED this 20th day of February, 2008.

                                              s/ John L. Kane
                                              John L. Kane, Senior District Judge
                                              United States District Court